Pomeroy *v.* Mills.

---

JOSEPHINE POMEROY et al., appellants,

*v*

ALFRED MILLS et al., executors, respondents.

1. In fixing the fees allowed to a surrogate for auditing and stating the accounts of executors &c., of estates amounting to more than $50,000, in which case they are left, to a certain extent, to the discretion of the court, regard should be had to the work and trouble involved, and such allowance made as will be a fair and just compensation. In this case, on an estate of $517,000, an allowance of $750 to the court and surrogate was reduced to $50.

2. In a case where the commissions of brokers for selling and buying stocks and securities of the estate had been paid out of the estate; and the time covered by the account was not over a year; and the assets appear to have been readily convertible, and there was no matter of especial difficulty in the settlement of the estate, an allowance to the executors of a commission of five per cent. on the estate ($517,000) was held to be excessive, and reduced to three per cent. thereon. The fact that the executors were thereafter to raise out of the real estate and pay over to a designated trustee a large sum of money was held not to warrant an allowance in respect of such service, since their compensation depended upon their discharging the duty, and could not justly be paid until after the duty had been performed.

---

Appeal from allowance of commissions made to executors, and allowance to surrogate for auditing account.

*Mr. T. Little* and *Mr. F. J. Mather*, of New York, for appellants.

*Mr. B. Gummere*, for respondent, A. Mills.

THE ORDINARY.

The orphans court of Morris county, on passing the final account of the executors (Messrs. Alfred Mills and Edward Pomeroy) of George Pomeroy, deceased, allowed them commissions to the amount of $25,876.65, being five per cent. on the amount of the estate which came to their hands to be administered. It allowed for " court's and surrogate's fees on the account, auditing, stating decree and entering, recording copy &c., including drawing and posting notices of settlement and proof thereof," $750. Josephine and Julia Pomeroy, two of the legatees, appealed from the decree by which those allowances were made. After they were made, Edward Pomeroy, one of the executors, objected to the allowances as being of far too large an amount, and moved the court for a reduction thereof. By his petition he accounted for his apparent consent to the allowance to the executors by the fact that he understood from his co-executor that the allowance would necessarily be at the rate of five per cent. The court reconsidered the matter, and by their order denied his application. The order recited that it appeared that when the account was subscribed and sworn to by the executors, the statement and prayer for allowance of the commissions appeared in the account in the very words and figures that appeared in the account as allowed ; that the petitioner, in his own right and as attorney in fact for the other two residuary legatees (the appellants), had full knowledge of the account and commissions so stated ; and that he, as executor, united in the prayer for commissions at the rate allowed ; that there was no fraud or mistake, and that, considering the services rendered and responsibility imposed on the executors in the administration, they were entitled to the allowance. It will have been seen that the recital makes no mention of the allowance of $750 to the court and surrogate on the passing of the account. No items of that allowance are given, and it does not appear how much of the amount is allowed to the court and surrogate respectively. Obviously the allowance is grossly in excess of what would be proper under the circumstances. In fixing the compensation of the surrogate for auditing, stating and reporting an account, the statute should

Pomeroy *v.* Mills.

of course be followed where its direction is positive, but where (as it is in the case of estates amounting to more than $50,000) the matter is left, to a certain extent, to the discretion of the court, regard should be had, in exercising the discretion, to the work and trouble involved, and such allowance in excess of the amount fixed by statute should be made as will fairly and justly compensate the surrogate for his work. And beyond that the court ought not to go. For auditing, stating and reporting the account in this case, $50 would be sufficient compensation. For the rest of the items the statute fixes the compensation, and nothing beyond the statutory compensation can be allowed.

The amount of commissions allowed to the executors is also excessive. Such of the personal property as was not delivered over to the legatees to whom it was specifically bequeathed, has been sold, but it was sold through brokers, whose commissions were paid out of the estate, and the securities which have been purchased have been bought in like manner. The time covered by the account is not over a year. The assets appear to have been readily convertible, and there does not appear to have been any matter of especial difficulty in the settlement of the estate. The executors are still charged with a duty in regard to the real estate—to raise and pay over to a trustee, the New York Life Insurance Trust Company, $100,000, and they are to take care of the property in the meantime; and it is suggested that, in the allowance of commissions, the trouble which they may have in discharging that duty was probably taken into account. But it is quite obvious that no allowance should have been made on that account. Thus to pay the executors in advance is not only to act, to a very great extent at least, upon conjecture as to the trouble they will have in the future and the time they will be compelled to devote to the duty and the risk they will incur, but is to make compensation for duty which they may never perform at all. And if one should die or become disabled, or remove away, or refuse to act, and the other should do the duty, the former would have been paid for the discharge of duty never performed, while the latter would have done the whole duty for only half of the

compensation allowed for it. The death or incapacity of both, to say nothing of other contingencies, may put it entirely out of their power to discharge the duty, and in such case they would have been paid for the discharge of the trust, but would not have executed it, and another trustee must be appointed, by whom the duty would be performed and for whose compensation the trust estate would of course be liable. The principles which should govern in fixing the amount of the commissions to be awarded under the statute to executors and administrators, is laid down by this court in *Wolfe's Case, 7 Stew. Eq. 223.* The compensation is to be reasonable, and is of course to be within the positive limitations of the statute. The size of the estate, and the good policy and necessity of so dealing in the matter of remuneration as not to repel those who can render valuable service in such trusts, and whose acceptance thereof is desirable, are in no wise to be left out of the account. At the same time regard is to be had, in the language of the statute, to the trouble, risk and actual pains rather than to the size of the estate. The discretion to be used by the orphans court in fixing such commissions is a judicial one, and any person aggrieved by its action in that respect may appeal to this court. *Anderson v. Berry, 2 McCart. 232.* And while, where the facts are the same and the opportunity of judging the same also, this court, in reviewing the action of that on the subject, will not reverse unless there is manifest error of judgment, it is the duty of this court to reverse where there is such error. Such is the case here. The estate is large, but the settlement has not, as before remarked, been attended with special difficulty, trouble, risk or pains. The compensation allowed is to the utmost limit of the statute. In my judgment, three per cent. on the amount received, $517,533.01, would be proper compensation.

I deem it proper to say that I do not find that there was any unfair conduct on the part of Mr. Mills with reference to the fixing of the commissions, either in his statements to his co-executor on the subject or in any other way, or any action warranting criticism. He appears, it may be added, to have facilitated the obtaining from the orphans court of the review of their

decision as to the amount of the allowances. The decree of the orphans court will be reversed as to the amount of the allowances under review, and those to the executors will be fixed at three per cent. on $517,533.01, and the item of fees to court and surrogate will be taxed, the allowance to the latter for auditing, stating and reporting the account being fixed at $50. The costs of the appeal and a counsel fee of $100 to each side will be paid out of the estate.